# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DENNIS LEWIS, et al.,**

    **Plaintiffs,**

    **v.**      Case No. 05-C-1008

**JOHN MICHAEL STRAKA, et al.,**

    **Defendants.**

## DECISION AND ORDER

### I. BACKGROUND

Plaintiffs bring this putative class action alleging that CIB Marine Bankshares, Inc. ("CIB"), a privately held bank holding company headquartered in Wisconsin, and individuals who hold or held leadership positions in the company (collectively "individual defendants" or "defendants") violated §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t and Rule 10b-(5). 17 C.F.R. § 240.106-5. CIB operates numerous bank and non-bank subsidiaries, mainly in the Midwest. Among the individual defendants are John Michael Straka, who from 1987 to 2004 served as CIB's president and CEO and on the boards of CIB subsidiaries; Steve Klitzing, CIB's senior vice president, CFO, treasurer and assistant secretary; and Donald Straka, CIB's general counsel and secretary. Other individual defendants served on CIB's board and/or its audit, stock option and compensation committees and on the boards of CIB subsidiaries. Plaintiffs allege that they purchased shares of CIB stock between April 12, 1999 and April 12, 2004 (the "class period") in reliance on defendants' misrepresentations concerning the financial health of the company and incurred damages as a result. Plaintiffs also name as a defendant KPMG, LLP ("KPMG"),

an accounting firm that plaintiffs allege issued audits that misrepresented CIB's financial condition.

Plaintiffs allege that in various submissions to the SEC and others, defendants misrepresented a number of matters relating to CIB's financial condition, including the volume of non-performing loans, the adequacy of CIB's loan loss reserves, and the company's policies and procedures regarding loans. Further, plaintiffs assert that defendants utilized the SEC submissions and auditor reports containing the misrepresentations in private placement memoranda, which it used to solicit investors. Plaintiffs further allege that before and after 2000, bank examiners raised questions about CIB's practices and prospects. Plaintiffs further allege that in 2001, regulators reviewed CIB's loan portfolio and its credit granting practices and made a number of criticisms and suggestions. In addition, plaintiffs allege that in 2002, regulators discovered over $200 million in undisclosed problem loans in CIB's Chicago branch. Plaintiffs also allege that in 2004 CIB projected its 2003 losses to be about $150 million and its nonperforming assets at about $200 million. CIB further disclosed that its 2001 and 2002 financial reports contained numerous material misstatements and needed to be restated. Plaintiffs also allege that in 2004, in connection with the disclosure of CIB's financial problems, president and CEO Straka retired.

Plaintiffs allege that defendant KPMG audited CIB and issued reports containing false and misleading information about CIB's financial condition, although KPMG had reason to know that such information was inaccurate. Plaintiffs further claim that such reports did not comply with Generally Accepted Accounting Standards ("GAAS"), and that KPMG did not provide a reasonable basis for its opinions and recklessly or intentionally overlooked serious problems in CIB's loan portfolio.

-2-
Case 2:05-cv-01008-LA   Filed 10/12/06   Page 2 of 19   Document 157

I will discuss plaintiffs' allegations in greater detail in the course of the decision. Plaintiffs initially brought several suits in federal court in Illinois, and the court consolidated the suits and transferred them to this district. Before me now are defendants' and KPMG's motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## II. STANDARD OF REVIEW

A complaint or portion thereof may be dismissed for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even accepting all of the alleged facts, the plaintiff has no legal claim. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 627 (7th Cir. 1999). In reviewing a complaint under this standard, the court must accept as true the plaintiffs' allegations, Hosp. Bldg. Co. v. Tr. of Rex Hosp., 425 U.S. 738, 740 (1976), and construe the complaint in the light most favorable to the plaintiff, resolving all doubts in his favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

Although courts are usually confined to the pleadings, in considering a motion to dismiss, a court may consider documents attached to the complaint as well as documents attached to the motion to dismiss if such documents are referred to in the complaint and are central to the plaintiffs' claim. See Fed. R. Civ. P. 10(c); 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002).

In addition to satisfying traditional pleading requirements, a well-pled Exchange Act claim must conform to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. Plaintiffs must plead the circumstances surrounding the alleged fraud with particularity. Fed. R. Civ. P. 9(b). Plaintiffs must also specify each misstatement and the

reason that it was misleading at the time that it was made. 15 U.S.C. § 78u-4(b)(1). Additionally, plaintiffs must plead particular facts giving rise to a strong inference that the defendants acted with scienter. 15 U.S.C. § 78u-4(b)(2).

## III. DISCUSSION

### A. CIB and Individual Defendants' Motions

I begin by considering defendants' motions to dismiss plaintiffs' § 10(b) and Rule 10b-5 claims. To state a claim under these provisions, plaintiffs must allege that defendants (1) made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which they justifiably relied and (6) that the false statement proximately caused them damages. Makor Issues & Rights, Ltd. v. Tellabs, Inc., 437 F.3d 588, 595 (7th Cir. 2006). Defendants contend that plaintiffs fail to satisfactorily plead that defendants made a material misrepresentation, possessed scienter and that plaintiffs relied on or suffered loss from the alleged misrepresentations.

I address first whether plaintiffs sufficiently allege that defendants made material misrepresentations. I consider only statements made by defendants between January 21, 2000 and August, 2002. This is so because an action alleging a violation of § 10(b) must be brought within five years of the violation, see 28 U.S.C. § 1658(b)(2); see also Lampf v. Gilbertson, 501 U.S. 350, 363 (1991) (stating that the five year repose period "serves as a cutoff"), and plaintiffs' action commenced on January 21, 2005 when plaintiff Dennis Lewis filed suit.[1] Further, purchasers of stock could not have relied on a statement concerning the

---

[1] Although the statute of repose is generally an affirmative defense, I may limit plaintiffs' claims based on it because plaintiffs allege facts sufficient to establish the defense. See Hollander v. Brown, 457 F.3d 688, 691 (7th Cir. 2006).

stock made after the date of purchase. Roots P'ship v. Lands' End, Inc., 965 F.2d 1411, 1420 (7th Cir. 1992). Here, no named plaintiff purchased stock after August 2002.

### 1. Material Misrepresentations

In pleading false statements of material fact, plaintiffs must "specify each statement that is allegedly misleading, the reasons why it is so, and, if based on information and belief, what specific facts support that information and belief." Makor, 437 F.3d at 595. With respect to omissions of material fact, silence is not misleading absent a duty to speak. Stransky v. Cummins Eng. Co., 51 F.3d 1329, 1331 (7th Cir. 1995). Further, issuers of stock need not disclose the hazards of their business, but the data they disclose must be accurate and sufficient to enable investors and analysts to draw conclusions about the company's condition. Wielgos v. Commw. Edison Co., 892 F.2d 509, 515 (7th Cir. 1989). A statement is material if it is likely that a reasonable purchaser or seller of a security (1) would consider it important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by the statement. Id. However, mere puffery is not actionable under Rule 10b-5. "If the statement amounts to vague aspiration or unspecific puffery, it is not material." Eisenstadt v. Centel Corp., 113 F.3d 738, 746 (7th Cir. 1997).

Plaintiffs allege that defendants made misrepresentations and omissions concerning CIB's business strategy, its loan portfolio, and whether it had in place and followed appropriate policies and procedures regarding loan approval and monitoring of loans. Plaintiffs first allege that defendants misrepresented the nature of CIB's growth strategy and whether such strategy represented a departure from past strategy. Plaintiffs aver that defendants stated that CIB's growth strategy was to acquire small to medium-sized conservatively run community banks and to make loans to small to medium-sized businesses.

Plaintiffs allege that CIB's actual strategy was to make multi-million dollar loans to a few high-risk borrowers and that such strategy constituted a radical departure from past practice. Plaintiffs set out with sufficient particularity the statements that they allege were misleading in this regard and the reasons why they believe them to be so. However, plaintiffs' allegations nevertheless fail because CIB had no duty to provide more information than it did about its growth strategy.

In its 2001 10-K report,[2] CIB characterized its business plan as a "niche" strategy that involved meeting small to medium-sized customers' lending needs by making "various types of loans, including commercial real estate loans, commercial business loans, [and] agricultural and construction loans." (Zylman Decl. Ex. E.) The 10-K report also stated that CIB often made "multiple and different types of loans to the same customer." (Id.) And it stated that "as a result of its emphasis on building ongoing relationships," CIB had "a number of lending relationships in which the aggregate amount of loans outstanding to a customer or a group of affiliated customers exceeds $10 million." (Id.) Thus, CIB indicated that it made large loans to some customers. Moreover, small to medium-sized businesses can include construction and real estate companies and farmers. Thus, CIB provided sufficient information to allow investors to draw conclusions regarding the nature of its business and investigate the risks. As to plaintiffs' allegation that defendants failed to disclose that CIB's growth strategy was new, CIB's 2001 10-K states that "upon change of ownership, CIB Marine changed its strategy," and that the present growth was due to the "implementation of its

---

[2] As noted, I may consider the 10-K reports attached to defendants' motion to dismiss, as such reports are referred to in plaintiffs' complaint and are integral to their claims. 188 LLC v. Trinity Indus., Inc., 300 F.3d at 735.

growth strategy." Thus, plaintiffs fail to adequately allege that defendants misrepresented CIB's growth strategy.

Plaintiffs also allege that defendants made material misrepresentations and omissions concerning CIB's loans and its loan-related practices. Generally, a lending institution's failure to manage its loan portfolio competently or to maintain adequate reserves against loan losses is not actionable. DiLeo v. Ernst & Young, 901 F.2d 624, 626 (7th Cir. 1990); see also Shapiro v. UJB Fin. Corp., 964 F.2d 272, 281 (3rd Cir. 1992). However, a well-pled complaint alleging that a bank knowingly or recklessly hid its true financial status by deliberately misstating its level of non-performing loans or failing to disclose the inadequacy of its reserves or its indulgence of problem loan customers may be actionable. DiLeo, 901 F.2d at 626. It is essential, however, that a plaintiff's allegations "separate fraud from the benefit of hindsight." Id. at 628. Thus, a complaint must provide examples of problem loans that a company should have caught or explain how the company should have recognized that its loan reserves were inadequate. Id. at 626. Plaintiffs allege that in CIB's 2000 and 2001 10-K reports, defendants understated the volume of CIB's non-performing loans, failed to disclose that most of the non-performing loans were concentrated among a relatively small number of borrowers who obtained their loans from CIB's Chicago branch, and falsely represented that CIB's loan loss reserves were adequate and that CIB's policies and procedures for handling loans were adequate. Plaintiffs further allege that defendants used the 2001 10-K report in a private placement memorandum designed to raise money, and that in an April 2002 letter, defendant John Michael Straka underreported non-performing assets and falsely reported substantial increases in CIB's profits. Plaintiffs also set forth facts supporting the reasons they contend the above statements were misleading. They allege that bank regulators examined CIB's financial situation, found numerous problems, and warned

defendants that CIB's loan portfolio was in decline, that its loan loss reserves were inadequate, and that its lending and auditing practices were suspect. Plaintiffs allege that such warnings clearly indicate that when defendants represented CIB's financial situation as sound without offering qualifications, they were making misleading statements. Based on these averments, plaintiffs properly have alleged false and misleading statements regarding loans and loan practices.

I turn next to whether plaintiffs sufficiently allege materiality. Defendants contend that they made cautionary statements indicating that CIB's future was subject to contingencies. However, cautionary statements about the future do not render misrepresentations immaterial if defendants misrepresented such matters as the adequacy of the loss reserves to protect against known losses and known risks in light of the then-current economic conditions. In re Westinghouse Sec. Litig., 90 F.3d 696, 706 (3rd Cir. 1996). This is so because "[a] reasonable investor might well be willing to take some chances with regard to the future of the economy, but might be quite unwilling to invest in company that knew that its reserves were insufficient under current conditions" and/or knew the company might have to restate its financial condition. Id. In the present case, plaintiffs allege that defendants were on notice that their current financial status did not support their representations, yet schemed to make CIB seem more profitable than it was in order to raise funds though private placement offerings and failed to disclose the above-mentioned problem areas. Thus, with respect to defendants' statements regarding these matters, plaintiffs sufficiently plead material misrepresentations.

Plaintiffs also allege that defendants misrepresented that CIB had in place comprehensive and adequate procedures for making and monitoring loans, when in fact such procedures did not exist or defendant directors and officers ignored them. Plaintiffs point to

defendants' representations that it had established comprehensive loan review safeguards, that it had hired highly experienced loan officers and that its loan loss reserves were adequate in relationship to its loan portfolio. They also point to defendants' failure to provide any indication as to its large number of non-performing loans. Plaintiffs allege that these statements and omissions individually and collectively misled investors and analysts with respect to CIB's actual practices. Plaintiffs allege that CIB made many unsafe loans and that it required its subsidiary banks to make unsafe loans in violation of §§ 23 A and B of the Federal Reserve Act. Plaintiffs further allege that CIB encouraged its loan officers to sit on credit review committees despite an inherent conflict of interest, and that CIB lenders unethically loaned money to insiders on favorable terms and encouraged them to purchase CIB stock with loan proceeds and use the stock as collateral for the loans. Plaintiffs also allege that bank examiners questioned these practices. Thus, plaintiffs plead misrepresentations with sufficient particularity and also state the reasons underlying their allegations. Further, they allege enough to give rise to a reasonable inference that defendants' representations were material. A reasonable investor in bank securities would likely regard defendants' representations concerning its loan practices, policies and procedures to alter the total mix of available information to a potential investor deciding to make an investment decision.

### 2. Scienter

Scienter is a "mental state embracing an intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 n.12 (1976). Within the Seventh Circuit, scienter is "an extreme departure from the standards of ordinary care, [ ] which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Makor, 437 F.3d at 600 (citing Sundstrand Corp.

v. Sun Chemical Corp., 553 F.2d 1033, 1045 (7th Cir. 1977)). Under the PSLRA, with respect to each alleged false statement or omission, plaintiffs must state with particularity facts giving rise to a strong inference that defendants acted with scienter. Id. To determine whether a strong inference exists, "the best approach is for courts to examine all of the allegations in the complaint and then to decide whether collectively they establish such an inference." Id. Further, plaintiffs must plead scienter with respect to each individual defendant. While I may aggregate allegations in a complaint to determine whether they create a strong inference of scienter, in multiple defendant cases, plaintiffs must create this inference regarding each defendant. Id. at 602.

An officer or director of a corporation who signs a fraudulent Form 10-K with the requisite level of scienter can be liable under § 10(b) for making false statements. Howard v. Everex Sys., Inc., 228 F.3d 1057, 1061 (9th Cir. 2000); see also Southland Sec. Corp. v. Inspire Ins. Solutions, Inc., 365 F.3d 353, 365 (5th Cir. 2004) (stating that a corporate officer may be liable for corporate statements if a signature on a document or factual allegations link her to the statements). However, I cannot infer scienter based merely on a defendant's position in a company. Abrams v. Baker Hughes, Inc., 292 F.3d 424, 432 (5th Cir. 2002). "One of the classic fact patterns giving rise to a strong inference of scienter is that defendants published statements when they knew facts or had access to information suggesting that their public statements were materially inaccurate." Fla. State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 665 (8th Cir. 2001) (internal citations omitted). A substantial restatement of a company's losses or a write-down of its profits may also support an inference of scienter. Id. at 666 (noting that "the sheer size of the $390 million write-down adds to the inference that the defendants must have been aware the problem was brewing"). Finally, while "[m]otive and opportunity [to engage in fraudulent activity] may be useful indicators, . . .

nowhere in the statute does it say that they are either necessary or sufficient." Makor, 437 F.3d at 602.

Plaintiffs first allege that the facts give rise to a strong inference of scienter on the part of John Michael Straka. Plaintiffs allege that as president and CEO of this closely-held corporation, Straka had a great deal of control over it. They also allege that in 1999, Straka proclaimed that CIB would attain $5 billion in assets within the next five years. They allege that Straka signed all of CIB's 10-Ks between 2000 and 2002 and that he signed the April 25, 2002 letter. Plaintiffs also allege that Straka and members of his family engaged in considerable self dealing, obtaining loans on terms more favorable than those available to the public. Plaintiffs further allege that based on Straka's deep involvement with CIB, it is reasonable to infer that he knew of the bank regulators' warnings regarding the problems in CIB's loan portfolio and with its lending practices. All of these allegations give rise to a strong inference that in making the upbeat representations about CIB's financial health discussed above, Straka knew or recklessly disregarded certain truths about the company's situation. It can reasonably be inferred from plaintiffs' allegations that Straka was aware that something was brewing.

Moreover, since John Michael Straka was acting within the scope of his position as CIB president and CEO, I may impute his knowledge to CIB. Makor, 437 F.3d at 603 (citing United States v. One Parcel of Land, 965 F.2d 311, 316 (7th Cir. 1992) (stating that "[w]here a corporate agent obtains knowledge while acting in the scope of his agency, he presumably reports that knowledge to his corporate principal so the court imputes such knowledge to a corporation")). Thus, plaintiffs' § 10b claims against CIB also survive defendants' motion to dismiss.

-11-
Case 2:05-cv-01008-LA    Filed 10/12/06    Page 11 of 19    Document 157

Plaintiffs' allegations concerning scienter with respect to the remaining defendants are based largely on the defendants' positions in the company and the duties associated with those positions. Plaintiffs allege that a number of defendants signed the 10-Ks and, by virtue of their positions as officers or directors or corporate counsel of CIB or as members of CIB's audit committee, knew and recklessly disregarded that CIB's representations concerning its financial health were misleading. Plaintiffs also allege that these defendants were motivated by their wish to continue to collect fees, salaries and bonuses and in some cases loans on favorable terms. However, an allegation that a defendant must have been aware that a representation was misleading based on his position with a company is by itself insufficient to support an inference of scienter. Abrams, 292 F.3d at 432; see also In re Suprema Spec., Inc. Secs. Litig., 438 F.3d 256, 281-82 (3rd Cir. 2006) (stating that such catch-all assertions do not satisfy the particularity requirements of Rule 9(b) and the PSLRA). Further, with respect to plaintiffs' allegations regarding the audit committee, an "allegation that the Outside Directors, qua directors and members of the audit committee, had access to unspecified business records and a duty to review them does not give rise to a strong inference that the Outside Directors individually knew of or recklessly disregarded particular wrongful recognitions of revenue." In re Suprema Spec., 438 F.3d at 282. Thus, I conclude that plaintiffs have failed to plead scienter with respect to the remaining individual defendants, and that I must therefore dismiss plaintiffs' § 10(b) claims as to them.

### 3. Reliance and Loss Causation

Plaintiffs must also allege that they relied on defendants' misrepresentations, Rowe v. Maremont Corp., 850 F.2d 1226, 1233 (7th Cir. 1988), and lost money because of them, Makor, 437 F.3d at 596. To plead reliance, plaintiffs must allege that but for defendants' misrepresentations or omissions, they would not have entered into the detrimental securities

transaction. Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 197 (2nd Cir. 2003). Defendants contend that plaintiffs fail to plead reliance adequately. Plaintiffs respond that they may rely on a presumption of reliance and alternatively that they have properly alleged reliance.

In certain circumstances, a plaintiff may satisfy his duty to plead reliance by relying on a presumption. A rebuttable presumption of reliance arises when a plaintiff satisfactorily pleads "fraud on the market," i.e., that a defendant made public misrepresentations regarding stock sold in "an impersonal, efficient market." Basic, Inc. v. Levinson, 485 U.S. 224, 241-42 (1988). In order to benefit from the presumption, plaintiffs must allege that the stock in question traded in an open, efficient market or facts from which I may infer that this was so. In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1419 (3rd Cir. 1997); see also Basic, Inc., 485 U.S. at 248 n.27 ("[T]he question on a motion to dismiss is not whether plaintiff has proved an efficient market, but whether he has pleaded one.").

Plaintiffs' allegations do not meet this standard. Plaintiffs allege neither that CIB stock was traded in an efficient market or facts giving rise to an inference that it was. Plaintiffs allege that defendants promoted CIB stock through private placement memoranda but otherwise do not provide information regarding the trading or sale of CIB stock. For example, plaintiffs make allegations concerning the book value of CIB's stock but do not refer to market value or allege that there was a market. To obtain the benefit of the presumption of reliance, plaintiffs need not allege that CIB stock trade on a large market such as the New York Stock Exchange or the NASDAQ. However, they must allege some information indicating that a market existed, and their failure to do so prevents them from relying on the fraud on the market presumption to satisfy the requirement of pleading reliance.

-13-
Case 2:05-cv-01008-LA   Filed 10/12/06   Page 13 of 19   Document 157

A rebuttable presumption of reliance may also arise in a securities fraud case where a plaintiff pleads omissions rather than affirmative misrepresentations. Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 152-53 (1972); see also Joseph v. Wiles, 223 F.3d 1155, 1162 (10th Cir. 2000). Where a complaint alleges both omissions and representations, a court must analyze the complaint to determine which predominates. Id.; see also Eckstein v. Balcor Film Inv., 740 F. Supp. 572, 577 (E.D. Wis. 1990) (noting that when a complaint consists primarily of claims of material misstatements, the presumption does not arise because the need for the presumption does not exist). Misrepresentations include outright falsehoods and distortions of the truth, whereas omissions involve a failure to speak. Abell v. Potomac Ins. Co., 858 F.2d 1104, 1119 (5th Cir. 1988).

In the present case, plaintiffs primarily allege that defendants' statements regarding CIB's financial health and its loan portfolio were distortions of the truth. They allege that defendants made partial disclosures, leaving out detrimental information. These allegations fall more into the category of misrepresentations than omissions. Plaintiffs also allege that defendants falsely represented that CIB had in place adequate procedures relating to making and approving loans and that it followed such procedures. These claims also primarily allege misrepresentations. Because plaintiffs primarily allege misleading statements rather than omissions, they are not entitled to the benefit of the Affiliated Ute presumption.

As to whether plaintiffs plead reliance without the benefit of a presumption, they allege that

> CIB and the Individual Defendants' acts and practices as set forth in this complaint operated as a fraud and deceit upon plaintiffs and other members of the class in violation of §10(b) of the Exchange Act and Rule 10b-5 which caused plaintiffs and other members of the class to purchase CIB stock at artificially inflated prices during the class period when they not have otherwise done so.

(Am. Compl. ¶ 99.)  Plaintiffs further allege that they would not as "reasonable investor[s] . . . have purchased CIB stock during the Class Period had CIB and the Individual Defendants, in compliance with their duty under the Exchange Act, provided the aforesaid omitted information in the aforesaid Private Placement Memoranda, shareholder letters, press releases, 10Ks, 10Qs and correspondence from CIB."  (Id. ¶ 98.)  I conclude that as to the named plaintiffs, these allegations sufficiently plead that plaintiffs would not have purchased defendants' stock but for defendants' misrepresentations.  Harding Univ. v. Consulting Srvs. Group, L.P., 22 F. Supp. 2d 824, 829 (N.D. Ill. 1998).

To satisfactorily plead loss causation, plaintiffs must allege not only that they purchased securities at artificially inflated prices, but also that the company's share price fell significantly after the truth about the alleged misrepresentations or omissions became known.  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 345-46 (2005).  Plaintiffs must also allege that the conduct of which they complain caused the price to fall.  Id.  In the present case, plaintiffs allege that the book value of CIB's stock dropped considerably after defendants announced that CIB would restate its financial condition.  Specifically, plaintiffs allege that CIB's restated book values of $5.66 and $4.14 per share in 2004 constituted a substantial drop from its 2001 and 2002 values of $13.27 and $14.30.  Plaintiffs allege that such drop was caused by "unsafe, unsound and illegal lending practices that CIB and the Individual Defendants had knowingly engaged in," which "caused CIB to be substantially undercapitalized and severely deteriorated the credit quality of its large loan portfolio" and "pushed CIB to the brink of collapse."  (Am. Compl. ¶ 56.)  Based on these averments, plaintiffs adequately allege loss causation

### 4. Controlling Person Liability

Plaintiffs also allege that the individual defendants are "controlling persons" under § 20(a) of the Securities Exchange Act of 1934. 15 U.S.C. § 78t(a). Section 20(a) imposes liability on persons who "directly or indirectly" control the violator. See Makor, 437 F.3d at 605. Section 20(a) claims are derivative of §10(b) claims, as plaintiffs first must allege claims against the entity which defendants allegedly controlled. Id. However, section 20 is "something of a backdoor to liability" as plaintiffs' may proceed on claims against individual officers pursuant to § 20 even if they insufficiently alleged scienter against a defendant under § 10(b). Id. To sufficiently plead controlling person liability, a plaintiff must first allege that a defendant "actually exercised general control over the operations of the wrongdoer, and second, the control person must have had the power or ability – even if not exercised – to control the specific transaction or activity that is alleged to give rise to liability." Donohoe v. Consol. Op. & Prod. Corp., 30 F.3d 907, 911-12 (7th Cir. 1994). Whether a defendant is a controlling person is usually a question of fact which cannot be resolved at the pleading stage. In re Discovery Zone Secs. Litig., 943 F. Supp. 924, 943 (N.D. Ill. 1996).

As discussed, plaintiffs satisfactorily plead that CIB violated § 10(b). Further, plaintiffs allege that individual defendants and CIB officers John Michael Straka, Steve Klitzing and Donald Straka exercised control over CIB and had the power to control CIB's allegedly misleading misrepresentations. Thus, plaintiffs may proceed on their § 20(a) claims as to these defendants. With respect to the remaining individual director defendants,[3] plaintiffs also allege that these directors had the power to control or correct information that CIB provided

---

[3] The remaining individual defendants consist of members of the board of directors, including: Jose Araujo, Donald M. Trilling, Dean Katsaros, Scott M. Blake, Norman E. Baker, and Howard E. Zimmerman.

to plaintiffs. Further, plaintiffs allege that the individual director defendants signed the annual report for 2001 and that some of them served on the audit committee. Thus, as to both the individual officer and director defendants, plaintiffs' allegations are sufficient to survive defendants' motion to dismiss.

**B.     KPMG'S Motion**

KPMG argues that plaintiffs fail to satisfactorily plead that it made material misrepresentations or possessed scienter. As to material misrepresentations, a plaintiff states a claim under § 10(b) when he alleges that an auditor violated GAAS and explains how the auditor knowingly or recklessly violated such standards. In re Suprema Spec., Inc., 438 F.3d at 282. In the present case, plaintiff alleges that in its audit report covering 2001, KPMG falsely represented that it conducted its audits in accordance with GAAS, that it presented its reports in accordance with Generally Accepted Accounting Procedures ("GAAP"), and that CIB's financial statements "fairly stated" its position. Plaintiffs also allege that KPMG's reports misrepresented CIB's true earnings by failing to recognize CIB's loan losses, its mishandling of loans and its improper valuation of its loan portfolio. Thus, plaintiffs satisfactorily allege that KPMG made material misrepresentations.

Turning to scienter, as applied to an outside auditor, "recklessness means that the accounting firm practices amounted to no audit at all, or to an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." Davis v. SPSS, Inc., 385 F. Supp. 2d 697, 718 (N.D. Ill. 2005) (internal quotations omitted). Red flags indicating scienter are "specific, highly suspicious facts and circumstances available to the auditor at the time of the audit." Id. at 718. Allegations that an auditor had a motive to commit fraud simply because it stood to collect auditing fees is

insufficient.  In re Suprema Spec., Inc., 438 F.3d at 282.  Finally, allegations that defendant violated GAAS or GAAP, standing alone, are usually insufficient to support an inference of scienter.  In re Spiegel, Inc. Sec. Lit., 382 F. Supp. 2d 989. 1035 (N.D. Ill 2004).

In the present case, I conclude that plaintiffs fail to state facts giving rise to a strong inference of scienter.  First, as to the allegations that bank examiners warned CIB that its loan practices were suspect, plaintiffs do not allege that KPMG knew of such warnings.  A company's knowledge is not automatically imputed to an auditor. Second, as to plaintiffs' allegations that CIB-Chicago president John Bean warned KPMG of CIB's problems, plaintiffs do not allege that KPMG knew of Bean's statements when it conducted the 2001 audit.  Further, the mere fact that KPMG earned fees from CIB does not indicate a strong inference of scienter.  Nor does the allegation that some KPMG employees wanted to work for CIB create an inference of scienter.  An accountant's financial recompense from maintaining a strong reputation far outweighs the short term gain realized by improperly certifying a client's financial statements.  In re Suprema Spec., Inc., 438 F.3d at 282  Moreover, with respect to plaintiffs' allegations about the individual employees, plaintiffs have not alleged facts upon which this belief is based with any particularity, or indicated that these employees ever gained such employment.  Finally, CIB's restatements do not generate an inference of scienter.  Restatements are merely indications of errors in a financial report, not necessarily that the errors resulted from misrepresentations or fraud.  Although a large restatement may be circumstantial evidence of scienter, In re Spiegel, 382 F. Supp. 2d at 1035, plaintiffs do not allege with sufficient specificity that at the time of the 2001 audit, KPMG possessed information triggering a duty to investigate further, or that it recklessly disregarded so doing.  Thus, plaintiffs fail to state a claim against KPMG.

## IV. REQUEST TO AMEND

In their response to defendants' motion, plaintiffs request that I permit them to amend their complaint to remedy defects in their pleadings. Because the heightened standard under the PSLRA is difficult to meet, courts generally should grant leave to amend freely, absent proof of dilatory tactics, undue prejudice, or repeated failure to cure deficiencies by amendments previously allowed. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Although defendants contend that plaintiffs already have amended their complaint on several occasions, defendants did not move to dismiss such complaints, and there is no indication that plaintiffs have been dilatory. Thus, I will grant plaintiffs' request. Plaintiffs may replead allegations I held insufficient to state a claim.

## V. CONCLUSION

Therefore,

**IT IS ORDERED** that CIB and the individual defendants' motions to dismiss are **GRANTED IN PART AND DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that defendant KPMG's motion to dismiss is **GRANTED**.

**FINALLY, IT IS ORDERED** that plaintiffs' request to amend their complaint is **GRANTED**. Plaintiffs shall submit an amended complaint no later than **November 3, 2006**.

Dated at Milwaukee, Wisconsin, this 12th day of October, 2006.

                                        s/Lynn Adelman
                                        LYNN ADELMAN
                                        U.S. District Judge