IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| DENNIS LEWIS, MARK SELVAGGIO, MARY SELVAGGIO, ANTHONY SELVAGGIO, GARY NEVINS, MICHELE NEVINS, JAMES R. SCHUETT, HARRY ALTON, DORIS ALTON, BERNIE MYLER, LINDA MYLER, JAMES HAUSMAN, and STEVEN E. MORGAN<br><br>*On behalf of themselves and all others similarly situated,*<br><br>        Plaintiffs<br><br>v.<br><br>JOHN MICHAEL STRAKA, DONALD STRAKA, STEVEN KLITZING, DONALD M. TRILLING, DEAN M. KATSAROS, W. SCOTT BLAKE, HOWARD E. ZIMMERMAN, NORMAN E. BAKER, JOSE ARAUJO and CIB MARINE BANCSHARES, INC.,<br><br>        Defendants. | Case No. 05-cv-1008 (LA)<br><br>Judge Lynn Adelman |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Dennis Lewis and plaintiffs Mark Selvaggio, Mary Selvaggio, Anthony Selvaggio, Gary Nevins, Michelle Nevins, James R. Schuett, Doris Alton, Bernie Myler, Linda Myler, James Hausman, and Steven E. Morgan (collectively "Plaintiffs"), by their undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Final Approval of Class Action Settlement.

## INTRODUCTION

As the Court is aware, Plaintiffs and Defendants CIB Marine Bancshares, Inc. ("CIB"), J. Michael Straka, Donald Straka, Steven Klitzing, Donald M. Trilling, Dean M. Katsaros, W. Scott Blake, Howard E. Zimmerman, and Norman E. Baker, together with the Estate of Jose Araujo ("Defendants") reached a settlement of this lawsuit following a full-day settlement conference held before the Court. That conference was called following the revelation that CIB's financial condition, coupled with its insurer's denial of coverage for this action, created a substantial risk that any judgment against Defendants might prove uncollectable. The negotiations, which followed a prior, unsuccessful attempt at mediation, involved not only counsel for both sides, but also various individual plaintiffs and defendants. A settlement was reached only with Court assistance following hard-fought, arm's-length negotiations.

The settlement creates a fund of $4.418 million to address the claims of CIB shareholders, and represents a fair, reasonable, and adequate recovery not only in light of the uncertainties and risks associated with any litigation but particularly in view of CIB's precarious financial condition. It should be finally approved.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### I. THE ACTION

This case arises out of two cases originally filed in the Central District of Illinois. On January 21, 2005, lead Plaintiff Dennis Lewis filed a complaint on his own behalf and on behalf of a purported class of CIB shareholders in the United States District Court for the Central District of Illinois, Urbana Division, Case No. 05-cv-2015 (the "*Lewis* Action"). On April 12, 2005, the *Lewis* Action was consolidated for pretrial purposes with another case, filed in the Peoria division of the same Court and transferred to the Urbana Division – *Sollberger v. CIB Marine Bancshares, Inc., et al.,* Case No. 05-cv-1012 (the "*Sollberger* Action"). Plaintiffs in the

*Sollberger* Action subsequently moved to dismiss that action, and the current Plaintiffs (excluding Steven Morgan, who intervened as a plaintiff in 2007) along with Harry Alton (who has subsequently died) filed their First Consolidated Complaint (the "Consolidated Complaint") against Defendants and KPMG, LLP ("KPMG").

The Consolidated Complaint alleges that Defendants and KPMG violated Sections 10(b) of Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b-5 and are liable to a class under those provisions as well as Section 20(a) of the Securities Exchange Act of 1934. The claims are based on statements made in private placement memoranda used to solicit investors in CIB and in other documents, including documents filed with the Securities and Exchange Commission. The statements generally regard CIB's financial condition, including the volume of non-performing loans, the adequacy of CIB's loan loss reserves, and CIB's policies and procedures regarding making loans and loan administration. Plaintiffs sought to pursue these claims on behalf of a class of CIB shareholders who purchased shares between April 12, 1999 and April 12, 2004. Pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4 ("PLSRA"), Dennis Lewis was appointed Lead Plaintiff, Joseph W. Phebus was appointed Lead Plaintiff's attorney, and Joseph W. Phebus, Daniel J. Pope, Thomas Leiter, Samuel B. Zabek, Lawrence A. Walner and Kristi Browne were appointed as class counsel in the consolidated action (the "Action"). In August 2005, the Action was transferred to this Court and, thereafter, Douglas J. Phebus and Peggy A. Lautenschlager were appointed as additional class counsel.

The Consolidated Complaint was the subject of substantial motion practice. Defendants filed a Motion to Dismiss the Consolidated Complaint, which this Court granted in part in October 2006. The Court held, among other things, that claims arising prior to January 21, 2000

were time-barred (thereby restricting the temporal scope of the class), that certain of the misrepresentations as alleged in the Consolidated Complaint were not actionable, and that the Consolidated Complaint did not state a Section 10(b) claim against certain Defendants. The Court also determined, however, that Section 10(b) claims against other Defendants could proceed and further ruled that the Consolidated Complaint adequately alleged Section 20(a) controlling person liability as to the Defendants other than CIB.[1] The ruling did not, however, end the defendants' motions aimed at the sufficiency of the Consolidated Complaint. After each of the Defendants filed answers to the Consolidated Complaint, in which each denied violating any laws or committing any improper acts and asserted affirmative defenses, Defendants moved for judgment on the pleadings. That motion argued that the Consolidated Complaint had failed to allege scienter with the specificity required by the Supreme Court's intervening decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509-10 (2007).

After the Defendants' *Tellabs* motion was denied by the District Court on March 3, 2008, and the parties prepared to undertake full discovery (which had been stayed under the PSLRA's automatic stay provisions while Defendants' motions were pending). In May 2008, the parties exchanged initial disclosures and the Court entered a scheduling order. The broad scope of discovery that the parties anticipated, coupled with other events described below, quickly made it apparent that continued litigation of the case was unlikely to be in Plaintiffs' or potential class members' interests.

## II. SETTLEMENT EFFORTS

On April 1, 2008, CIB filed a Form 10-K for the year ended December 31, 2007. It disclosed that CIB's insurer, Progressive Casualty Insurance Company ("Progressive") had

---

[1] The Court did grant in its entirety a motion to dismiss KPMG from the Action.

declined any coverage for the Action – whether for payment of defense costs, settlement, or judgment. It also updated information regarding CIB's financial situation. Most notably, it confirmed CIB's impending obligation to pay over $39.75 million in arrearages on certain trust preferred securities in the first quarter of 2009 if the arrearage was not discharged prior to that time. It also disclosed that CIB had incurred substantial operating losses, that CIB anticipated incurring losses in the immediate future, and that efforts by CIB to improve its own capital position had met with only very limited success.

In view of CIB's financial condition, as well as CIB's obligation under its bylaws to advance defense costs to its present and former officers, the parties agreed to attempt to settle their dispute with the Court's assistance. On August 14, 2008, the Court held a settlement conference that was attended by counsel for all parties and counsel for Progressive, as well as by CIB's in-house counsel, various named plaintiffs and several individual defendants. After hours of hard-fought negotiations, the essential terms of a settlement were reached – with the parties agreeing to settle this action for a total payment of $4.418 Million, $1.3 million of which would be contributed by Progressive to obtain closure on coverage issues, and the remainder of which would be paid by CIB.

## III. PRELIMINARY APPROVAL AND NOTICE TO THE CLASS

On September 24, 2008, the parties filed a joint motion for preliminary approval of the settlement (the "Preliminary Approval Motion."). (Doc. 274) That motion provided the Court with both the final Stipulation and Agreement of Settlement that the parties had negotiated, (the "Settlement Agreement"), a proposed plan of allocation (the "Plan of Allocation"), the form of notice Plaintiffs proposed to mail to class members, a proposed form of publication notice (the "Publication Notice"), a proposed claim form (the "Claim Form") and a proposed form of final approval order (the "Final Approval Order"). (*Id.*) At the Court's suggestion, CIB later filed an

-5-
Case 2:05-cv-01008-LA    Filed 11/21/2008    Page 5 of 18    Document 284

agreed motion to substitute a modified form of mailed notice that clarified the per-share recovery available to class members (the "Notice") (Doc. 276).

On September 30, 2008, the Court granted the parties request for preliminary approval of the settlement and the Plan of Allocation, and approved the Notice, Publication Notice, and Claim Form. *(Id.)* (Doc. 277). It also preliminary certified a class for settlement purposes (the "Settlement Class") consisting of:

> all persons and entities who purchased the common stock of CIB Marine Bancshares, Inc. (including those who acquired CIB stock in exchange for stock in Citrus Financial Services, Inc. or another corporation) during the period between January 21, 2000 through April 12, 2004, inclusive. Excluded from the Settlement Class are the Defendants, members of their immediate families, any entity in which any Defendant had a controlling interest, and the legal representatives, heirs, controlling persons, successors, predecessors in interest or assigns of any Defendant.

*(Id.)* The Court's Preliminary Approval Order further directed that the Notice be mailed to all identifiable members of the Settlement Class by October 3, 2008, and provided that Settlement Class members would have until November 14, 2008 to submit any objections to the settlement or to seek to exclude themselves from the Settlement Class.

Notice has now been provided in accordance with the Court's Order, including both individual mailed notice and publication notice. See Affidavits of Ms. Lonna Schulz of First Class, Inc. and Daniel J. Pope attached hereto as Exhibits A and B. In addition, the Settlement Agreement (with all exhibits thereto – including the Plan of Allocation and proposed Final Approval Order), Notice, and Claim Form have been made available on the website of Plaintiffs' lead counsel. See Exhibit B. The Settlement Class's response to the notice has been very favorable. See Exhibit A. As of the date of this Memorandum (which follows by one week the deadline for objection), only one Objection has been filed. That Objection was filed by Great Bank Trust Company, Trustee of CIB Marine Bancshares, Inc. Employee Stock Ownership Plan

-6-
Case 2:05-cv-01008-LA    Filed 11/21/2008    Page 6 of 18    Document 284

(Doc No. 279). Should the Court allow the parties' proposed modification to the definition of "settled claims," which addressed that objection by allowing an ESOP carve out, there will be no objections by any class member. Moreover, there has been only one class member requesting exclusion in the amount of 317 shares.[2]

## ARGUMENT

### I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FULLY AND FINALLY APPROVED.

Seventh Circuit law favors the settlement of class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P*, 212 F.R.D 400, 409 (E.D. Wis. 2002) ("the settlement of class action litigation is favored"). Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, a court should approve a class settlement if it is fair, reasonable, and adequate and not a product of collusion. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). In making this determination, courts exercise "the high duty of care that the law requires of fiduciaries," but "are not to substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Great Neck*, 212 F.R.D. at 409 (*quoting Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 315 (7th Cir.1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir.1998)).

Determining whether a proposed settlement is fair, reasonable, and adequate typically involves considering seven factors: (1) the strength of plaintiff's case compared to the amount of the settlement; (2) defendants' ability to pay; (3) the complexity, length, and expense of further litigation; (4) opposition to the settlement from members of the class; (5) any indications of

---

[2] A total of five requests for exclusion were received. Four of the requests, however, were received from individuals who requested exclusion on grounds that they were not members of the Settlement Class, and who in fact were not within the class.

collusion; (6) the opinions of counsel; and (7) the stage of the proceeding and the amount of discovery completed at the time of settlement. *See Isby*, 75 F.3d at 1199, *Great Neck*, 212 F.R.D. at 409. "The relative weight of each of these factors necessarily differs because of the various circumstances of each action," 7 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 22:92 (4th Ed. 2008). In this case, these factors overwhelmingly support approval of this settlement.

### A. The Strength of Plaintiffs' Case Compared to the Amount of the Settlement

The court must consider the strength of plaintiff's case compared to the amount of the settlement in assessing whether a class action settlement should be approved. *See Isby*, 75 F.3d at 199. As this court has recognized, however, "[t]he determination of whether a settlement is reasonable is not susceptible to mathematical equation yielding a particularized sum." *Great Neck*, 212 F.R.D. at 409 (*citing Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In addition, "the mere possibility that the class might received more if the case were fully litigated is not a good reason for disapproving the settlement" since "there is also a possibility that plaintiffs could receive less." *Id.* at 409-10 (*citing, in part, Granada Investments, Inc. v. DWG Corp*, 962 F.3d 1203, 1206 (6th Cir. 1992)).

Plaintiffs and class counsel believe that they could prove the claims they have asserted (and negotiated the proposed settlement on that basis), but there can be no guarantees that they would have prevailed on those claims. In general "[s]hareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted." *Great Neck*, 212 F.R.D at 409 (*citing Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976)). Damages, in particular, would have been hotly contested. While Plaintiffs believe that, had liability been established, damages of between $10 and $15 per eligible share would have been appropriate, Defendants proffered an expert analysis during the initial mediation effort

-8-
Case 2:05-cv-01008-LA    Filed 11/21/2008    Page 8 of 18    Document 284

claiming, at best, a recovery of 50 cents per eligible share (considerably less than is provided for by the Settlement Agreement on a per-share basis even if all eligible shares participate). This history suggests that Plaintiffs' efforts to establish both liability and damages would have been challenged by Defendants at every stage, and that a trial might ultimately have devolved into a battle of competing experts and credibility decisions to be decided by the jury. Under such circumstances, even the most meritorious of cases could have been lost. *See, e.g., In re JDS Uniphase Corp. Securities Litigation*, No. C-02-1486-CW, 2007 WL 478856 (N.D. Cal. Nov. 27, 2007 (jury returned verdict against plaintiffs following a lengthy trial, with result that the action was dismissed and plaintiffs were ordered to pay defendants the costs of defending the action). By contrast, the settlement of the action for $4.418 million is immediately realizable by the Settlement Class, and eliminates all risk.

**B.     Defendants' Potential Inability to Pay Makes this Settlement Appropriate**

Another important factor supporting this particular settlement is Defendants' ability to pay. In this case, even assuming that Plaintiffs could establish Defendants' liability for a more substantial damage award, Plaintiffs' ability to *recover* any award of damages was questionable for reasons having nothing to do with the merits.

As set forth above, the parties renewed their efforts at settlement following disclosure by CIB that it faced serious financial challenges. CIB's insurance carrier, Progressive, declined coverage for this case, leaving CIB responsible for paying both its own defense costs and those incurred by the individual defendants, whom CIB's bylaws required it to indemnify. In addition, CIB was, and remains, obligated to pay over $39.75 million in arrearages on certain trust preferred securities in the first quarter of 2009 unless the arrearage can be discharged prior to that time. This has not yet happened. Moreover, CIB has incurred substantial operating losses and anticipates incurring losses in the immediate future. These factors weigh powerfully in favor

of the settlement. *See Great Neck,* 212 F.R.D. at 410 (noting that defendants' recent emergence from bankruptcy, coupled with questions as to continued availability of directors' and officers' liability coverage, weighed in favor of settlement).

### C. The Substantial Continued Expense of Litigation Warrants Settlement

The continued expense of litigation also justifies the settlement reached here. This is a complex case addressing representations made by CIB concerning its financial condition, including the volume of non-performing loans, the adequacy of CIB's loan loss reserves, and CIB's policies and procedures regarding making loans and loan administration. Merits discovery would require massive review of documents to establish not only the truth or falsity of CIB's statements, but the particular facts known to individual defendants. As noted above, damages would also be highly contested, involving substantial expert testimony.

The case unquestionably would also have involved numerous pretrial motions. Defendants previously filed both a Motion to Dismiss and a Motion for Judgment on the pleadings challenging the Consolidated Complaint. Defendants had announced an intention to contest class certification on grounds that trial of the case would have been unmanageable.[3] Even assuming that the class *was ultimately* certified, Defendants no doubt would have filed motions for summary judgment. Likewise, any trial of this complex class action lawsuit would have involved further, substantial attorney and expert time, the introduction of voluminous documentary evidence, and considerable expenditure of judicial resources. Then, if Plaintiffs succeeded, Defendants would likely have appealed.

---

[3] Such manageability issues are mooted by this settlement. *See Amchem v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems. . . . .").

-10-
Case 2:05-cv-01008-LA    Filed 11/21/2008    Page 10 of 18    Document 284

Litigating this case would have resulted in enormous additional expenses for all parties, and would have served only to further strain CIB's ability to pay a judgment should Plaintiffs prevail – particularly in view of CIB's obligation to advance the litigation costs incurred by the other Defendants. Indeed, as noted above, avoiding this unnecessary and unwarranted expenditure of resources and time is therefore of benefit to all parties and the Court. *See Great Neck*, 212 F.R.D. at 410 ("[g]iven the prospects for a long and arduous trial and appeal process, settlement at this stage is beneficial to class members").

### D. There is No Substantial Opposition to the Settlement

If the Court finds that the settlement is fair, "it may accept it over the objection of some class members." *Wattleton v. Ladish Co.,* 89 F.R.D. 677, 680 (E.D. Wis. 1981). Here, however, it is apparent that members of the Settlement Class overwhelmingly support the Settlement. Following preliminary approval of the class settlement, the court-approved notice was mailed to over 1,200 CIB shareholders who could be identified as potential class members. As of November 14, 2008, the last date for filing objections, only one objection had been received. That objection – from CIB's own Employee Stock Option Plan – disputes only a trivial aspect of the settlement, seeking to exempt ERISA claims from the release, valued by counsel for the Objector at $110.00. Defendants have already agreed to that modification, subject to the Court's approval. *See Great Neck*, 212 F.R.D at 406-407 (noting resolution of similar objection by narrowing release). It is well established that a lack of significant objection is evidence that the settlement is fair, and weighs strongly in favor of approval. *See Great Neck,* 212 F.R.D. at 410 (*citing Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993)); *Goldsmith v. Technology Solutions Co.,* No. 92 C 4374, 1995 WL 17009594 at *5 (N.D. Ill. Oct. 10, 1995).

### E. The Settlement is Not a Product of Collusion

This settlement plainly is not the product of collusion. The essential terms of the settlement – including the sum of money that defendants would pay – were arrived at as the result of a full day settlement conference, involving not only arms-length negotiations by competent counsel, but also the Court's own supervision and intervention in an effort to bring the parties together. A strong presumption of fairness attaches to a settlements that are so supervised. *See Great Neck*, 212 F.R.D. at 410.

### F. Plaintiffs' Counsel Recommend the Proposed Settlement

The Court should also give weight to the opinion of counsel. *See Great Neck*, 212 F.R.D. at 410 ("[t]he opinion of competent counsel weighs in favor of approval of a settlement," *citing Armstrong*, 616 F.3d at 325); *Isby*, 75 F.3d at 1200 (the court is "entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable, and adequate). As set forth in the Preliminary Memorandum in Support of the Motion for Preliminary Approval, (Doc. 274) counsel for Plaintiffs are experienced in litigating similar cases. Counsel are of the unanimous opinion that this settlement is fair and reasonable, particularly in view of concerns over CIB's ability to pay an award of damages. In the absence of fraud or collusion, the Court may rely on counsel's opinion as weighing strongly in favor of the settlement. *See, e.g, Gatreaux v. Pierce*, 690 F.2d 616, 638 (7th Cir. 1982).

### G. The Amount of Discovery Is Appropriate

Finally, the stage of the proceedings and amount of discovery conducted is appropriate to the settlement. While this case settled at the outset of the discovery period, Plaintiffs' counsel had conducted a thorough prefiling investigation of their claims, as was required to set forth their claims in view of the heightened pleading requirements of the PSLRA. Moreover, Plaintiffs' counsel agreed to enter into settlement negotiations, and forego further discovery, precisely

because the benefits of additional investigation were substantially outweighed by the risk that CIB would prove unable to enter into *any* settlement, or pay *any* judgment, if a settlement was not promptly reached. Particularly given these circumstances and the stage of proceedings, the amount of discovery was appropriate and weighs in favor of the settlement. *See Great Neck*, 212 F.R.D. at 410 (approving settlement when evaluation of case "was based on a reasonable amount of information.")

In short, each of the factors used to evaluate whether a settlement is fair, reasonable, and adequate supports the conclusion that this settlement serves the interests of absent class members. The settlement should therefore be approved by the Court.

## II. THE PROPOSED PLAN OF ALLOCATION SHOULD BE APPROVED AS FAIR, REASONABLE AND ADEQUATE.

The Court's broad reservation of supervisory power over the settlement, its proceeds, and their ultimate disposition, includes review of the proposed Plan of Allocation. *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 429 (S.D.N.Y. 2001). In conducting that review, the court's "principal obligation is simply to ensure that the fund distribution is fair and reasonable." *Walsh v. Great Atl. & Pacific Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983). An allocation formula, however, "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *American Banknote*, 127 F. Supp. at 429-30.

Plaintiffs' proposed plan of allocation plainly meets this standard. During the class period, CIB shares were principally sold in private placements. The price in the placements increased from placement to placement during the class period.[4] Shares in a private placement at

---

[4] While CIB's shares occasionally were resold during the class period, CIB's records reflect that those sales almost always occurred at the most recent private placement price.

the outset of the class period were sold at a price of $17.69/share (as adjusted for a subsequent stock split). In the final private placement, shares sold for $23.22/share. Indeed, there were some shares later resold during the class period for as much as $24.

The Plan of Allocation takes this timing factor into account. Under the Plan of Allocation, the per-share price paid by class members is multiplied by price paid to obtain a weighting factor (so, for example, 100 shares purchased at $18.00 a share will have a weighting factor of 1800, while 100 shares purchased at $24.00 a share would have a weighting factor of 2400). A class member's individual weighting factor is then divided by the total weighting factor for all claims submitted. Assuming the examples above were the only claims submitted, the total weighting factor would be 4200, of which the 100 shares purchased at $18 would constitute .429 (1800 divided by 4200) and the 100 shares purchased at $24 would constitute .571 (2400 divided by 4200). The total funds available for distribution to the class will then be multiplied by the transaction weight number. Thus, if the total amount available were $1,000, the person who bought 100 shares at $24.00 a share will receive $571 and the person who bought 100 shares at $18.00 a share will receive $429.

This proposed allocation is fair to the Settlement Class. In general, "a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000). Here, Plaintiffs' proposed plan pays different class members different amounts depending on the time of their transactions, which reflects the relative strengths and weakness of their claims and the relative magnitude of the losses they suffered. Shareholders, who paid a higher price for their shares, later in the class period and following additional representations concerning CIB's financial health, receive a proportionately larger share of the class settlement than those who did not. This is not

objectionable. Indeed, while the notice distributed to class members described in general terms the nature of allocation proposed by the Settlement Agreement, and further directed Class Members to the settlement agreement posted on Lead Counsel's website (which contained a copy of the full Plan of Allocation), only one objection to the plan of allocation has been received. The Plan of Allocation should be approved

### III. THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES.

Plaintiffs also respectfully submit that the Court should give final certification to the Class that it preliminarily approved for purposes of settlement, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), in the Preliminary Approval Order (Doc. 277). As demonstrated in Plaintiff's preliminary approval application, all of the requirements for such certification have been met.

The proposed Settlement Class satisfies all of the requirements of Fed. R. Civ. P. 23(a). Its members are sufficiently numerous under Fed. R. Civ. P. 23(a)(1) because joinder of all of them would be impracticable. *See In re Bank One Sec. Litig./Chicago S'holder Claims*, 00 CV 0767, 2002 U.S. Dist. LEXIS 8709 at *9 (N.D. Ill. May 9, 2002). Although the exact size of the Settlement Class cannot be determined at this time, it is estimated to include hundreds of geographically dispersed shareholders (based on the fact that at the end of the Class Period more than 18 million shares of CIB common stock were outstanding). *See In re Anicom Sec. Litig.*, No. 00 C 4391, 2002 U.S. Dist. LEXIS 5575, at *6 (N.D. Ill. Mar. 26, 2002) (numerosity finding can be based on "good-faith estimates").

The Class claims also satisfy Fed. R. Civ. P. 23(a)(2), because they raise common questions of law and fact because their claims stem from "a common nucleus of operative fact." *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Defendants' alleged conduct poses numerous legal and factual issues that may be determined without reference to the individual

circumstances of any members of the Settlement Class. More specifically, named Plaintiffs allege that they and each of the other Settlement Class members were damaged by misrepresentations and omissions in documents issued by Defendants, or those that they controlled, during the Class Period.

The claims of the proposed class representatives are typical of the other Class members' claims, thus satisfying Fed. R. Civ. P. 23(a)(3). Their claims arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and his...claims are based on the same legal theory." *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). [5] Moreover, the possibility that the precise amount of damages awarded to individual members of the Class might vary does not defeat typicality. *De La Fuente*, 713 F.2d at 233 ("It is very common for Rule 23(b)(3) class actions to involve differing damage wards for different class members.").

The class representatives are also adequate Class representatives. They have no claims antagonistic to those of other Settlement Class members and their counsel is competent, experienced, and will more than adequately protect the Class's interest. *See In re Anicom*, 2002 U.S. Dist. LEXIS 5575 at *8 (*citing Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 58 (N.D. Ill. 1996)).

The proposed Class also meets the requirements of Fed. R. Civ. P. 23(b)(3). Common questions of law and fact predominate over individual questions and a class action will be superior to other available means of adjudication. *See* Fed. R. Civ. P. 23(b). While questions affecting the extent of Class members' individual damages may exist, these individual questions

---

[5] The class representatives purchased CIB securities during the Class Period and sustained losses of over $500,000 resulting therefrom. They thus, like the rest of the Class, claim to have been damaged by Defendants' alleged misrepresentations.

are eclipsed by the predominance of common questions. *See, e.g., Tatz v. Nanophas Techs. Corp.,* No. 01 C 8440, 2003 U.S. Dist. LEXIS 9982 at *26 (N.D. Ill. June 12, 2003) ("issues...flow[ing] from defendants' alleged misstatements...predominate").

With respect to the "superiority" analysis, the damages claimed by typical Class members would be dwarfed by the costs of individual actions. *See In re VMS Sec. Litig.,* 136 F.R.D. 466, 473 (N.D. Ill. 1991). Such shareholders have little or no ability to prosecute this type of litigation, and thus the class mechanism provides their only means of recover. *See, e.g. Nanophase,* 2003 U.S. Dist. LEXIS 9982, at *28. Furthermore, the absent members of the proposed Settlement Class have virtually no demonstrated interest in controlling the litigation. This jurisdiction is the best place to make a determination on these issues, as CIB is headquartered here and many of the events at issue occurred here. Finally, manageability concerns need not be addressed in the context of a proposed class action settlement. *See Amchem v. Windsor,* 521 U.S. 591, 620 (1997). For all of the foregoing reasons, the Settlement Class satisfies all of the Fed. R. Civ. P. 23 requirements necessary for class certification.

## CONCLUSION

For all of the foregoing reasons, the Court should finally approve the Settlement and enter the proposed Order and Final Judgment in its entirety.

Dated: November 21, 2008

                               Respectfully submitted,

                               DENNIS LEWIS, *et al.,* Plaintiffs, by Daniel J. Pope of
PHEBUS & KOESTER, counsel for Plaintiffs

                               By:   s/Daniel J. Pope
                                     DANIEL J. POPE
                                     PHEBUS & KOESTER
                                     136 West Main Street
                                     Urbana, Illinois 61801
                                     (217) 337-1400
                                     dpope@phebuslaw.com

## CERTIFICATE OF SERVICE

I hereby certify on the 21st day of November 2008, I electronically filed the foregoing document with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to counsel of record.

s/ Daniel J. Pope